IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Marple Newtown School District,<br>Plaintiff, | : | |
| | : | Civil Action No. _______________ |
| v. | : | |
| S.Z., as parent and<br>Natural guardian of A.B.,<br>Defendant. | : | Hon. |

**COMPLAINT**

**PRELIMINARY STATEMENT**

Pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. Section 1415 (i)(2), the Marple Newtown School District (hereinafter "District" or "MNSD") files this Complaint seeking partial review of a July 2, 2026, Decision and Order of a Pennsylvania Special Education Hearing Officer establishing placement for Student, A.B., at the Chester County Intermediate Unit Child Career and Development Center, for the 2026-2027 school year. The Hearing Officer ultimately determined that A.B. required a more restrictive setting in order to receive a free and appropriate public education ("FAPE"). Overwhelmingly, the Hearing Officer found in favor of the Marple Newtown School District and acknowledged that due to A.B.'s extreme behaviors, that A.B. continued to require a more intensive setting at the CCIU.

However, the Hearing Officer unilaterally and arbitrarily determined and ordered the placement to move from the CCIU classroom in Coatesville, Pennsylvania location to the Malvern, Pennsylvania location by September 15, 2026, despite that date being prior to the conclusion of the appeal period. Further, in his Order, the Hearing Officer declared, also arbitrarily, that if the new location at Malvern was not opened by September 15, 2026, that A.B. would be returned to his local neighborhood public school, a far less restrictive setting lacking

the supports that the Student needs. The Hearing Officer's Order has placed the District in an untenable position as the newly constructed Malvern location of the IU experienced construction delays which has inevitably delayed the opening of the new school by perhaps a few weeks, or until early October. However, A.B.'s behaviors are still extensive, dangerous, and require very skilled staff in a highly structured environment to manage, ensure safety of A.B. and others, and to enable A.B. to make meaningful progress, providing him with a FAPE. Essentially, the Hearing Officer has created a circumstance where he has expressly ruled that the out-of-district private placement at the CCIU, inclusive of all the supports and services offered at the location is necessary for a FAPE, while simultaneously declaring that if the new building is not prepared for opening by the utterly arbitrary date of September 15, 2026, that A.B. would be returned to his public-school life-skills classroom which lacks the support of the CCIU class where Student has been attending successfully. Essentially, the Hearing Officer has declared that CCIU provides a FAPE, while ordering the District to deny Student a FAPE by sending him back to an inappropriate in-district classroom where he experienced essentially no gains, all based upon a purely arbitrary deadline. For that reason, and for the good of this child, the District brings this Appeal.

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to 20 U.S.C. 1400 *et seq.* Jurisdiction is further predicated upon 28 U.S.C. Section 1331, this being an action arising under the laws of the United States.

2. This matter was heard before a Special Education administrative Hearing Officer who issued a final Decision and Order; therefore, administrative remedies have been exhausted. 20 U.S.C. 1415(i).

3. The Order of the Hearing Officer is dated July 2, 2026, and this matter was timely filed within the 90-day appeal timeline, pursuant to 20 U.S.C. 1415 (i)(2)(B).

4. Venue is proper under 28 U.S.C. 1391(b) as all pertinent events occurred in the Eastern District of Pennsylvania.

## II. PARTIES

5. Parent, S.Z., at all times relevant to this Complaint was a resident of Broomall, Pennsylvania, located within the geographical territory of the Marple Newtown School District in Delaware County, Pennsylvania.

6. A.B. is a minor and the son of S.Z. At all times relevant to this Complaint, A.B. resided with S.Z. in the home of S.Z.

7. Marple Newtown School District is a public school district located in Newtown Square, Pennsylvania. It is a recipient of federal funds and considered a Local Educational Agency ("LEA") under the IDEA.

8. Marple Newtown School District maintains its offices at 40 Media Line Rd #209, Newtown Square, PA 19073.

## III. STANDARD OF REVIEW

9. The IDEA permits "any party aggrieved by the findings and decision" to "bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy." 20 U.S.C. § 1415 (e)(2). In such an action, the court (i) shall receive the records of the administrative proceedings; (ii) shall

hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate. 20 U.S.C. § 1415(i)(2)(C)

10. When reviewing IDEA cases, District Courts conduct a modified *de novo* review. *S.H. v. State-Operated Sch. Dist. of Newark*, 336 F.3d 260, 270 (3d Cir. 2003); See also *Mary Courtney T. v. Sch. Dist.,* 575 F.3d 235 (3d Cir. Pa. 2009).

11. Under the modified *de novo* standard of review, the "district court must give 'due weight' to the administrative record and must consider factual findings from the administrative proceedings 'prima facie correct.'" *Jack J. v. Coatesville Area Sch. Dist.*, 2018 WL 3397552, *6 (E.D. Pa. July 12, 2018) (citing *Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 269 (3d Cir. 2012)).

12. Therefore, "[a] district court reviewing an administrative fact-finder's conclusions must defer to such factual findings unless the court identifies contrary non-testimonial evidence in the record or explains that the record read in its entirety compels a different conclusion." *Braden O. v. W. Chester Area Sch. Dist.,* 2017 WL 2869397, at *4 (E.D. Pa. July 5, 2017).

13. The Hearing Officer's legal conclusions, however, are subject to plenary review. *Braden O.*, 2017 WL 2869397, at *4 (citing *S.H.*, 336 F.3d at 271).

## IV. LEGAL AUTHORITY

14. Under the IDEA, a public school district must provide a "free appropriate public education" ("FAPE") to all eligible children. 20 U.S.C. 1412 (a)(1).

15. The IDEA requires that each disabled child must be provided with special education and related services that are in conformity with the student's IEP. 20 U.S.C. §1401(9)(D).

16. The IEP is a written document that includes, among other information, history about the student (recent testing results, background information, etc.); the student's present levels of academic achievement; what educational goals the student will be working on over the course of one year; and a list of "specially designed instruction" ("SDI"). 34 C.F.R. § 300.320.

17. The persons involved in contributing information to the IEP are the Parents; Student (if appropriate); the regular education teacher; the special education teacher; the LEA representative; and other persons who have knowledge or special expertise about the student. 34 C.F.R. § 300.320. This group of individuals is referred to as the student's IEP team.

18. At least once a year, the IEP team meets and develops the IEP. 34 C.F.R. § 300.323.

19. The mechanism for offering and delivering a FAPE is the IEP. *Endrew F. v. Douglas County Sch. Dist.*, 580 U.S. 386, 400 (2017).

20. In creating the IEP, the IEP team engages in "careful consideration of the child's present levels of achievement, disability, and potential for growth." *Endrew F.*, 580 U.S. at 400.

21. An LEA is not obligated to "provide 'the optimal level of services,' or incorporate every program requested by the child's parents." *Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 269 (3d Cir. 2012).

22. While a child's parents may desire more than the floor of opportunity required by the IDEA in hopes that their child's full potential might be realized by an ideal program, the law demands only that the program is reasonable and appropriate in light of a child's unique circumstances. *See Endrew F.*, 580 U.S. at 403.

23. At every IEP meeting, District personnel provide the Parents with a copy of the Procedural Safeguards Notice which outlines all their rights under IDEA and what their

legal options are should they wish to pursue them. 34 C.F.R. § 300.504.

24. After the IEP team meets and develops the IEP, the District sends a Notice of Recommended Educational Placement ("NOREP") to the Parents. 34 C.F.R. § 300.503.

25. The NOREP informs the Parents of the recommended programming and placement for the student pursuant to the IEP. The Parents can agree or disagree with a NOREP. If they agree, the IEP is put into effect and District personnel work with the Student on the Student's specific goals in the IEP and implement the SDI for that student. If the Parents disagree, they can request mediation or a due process hearing. 34 C.F.R. § 300.506; § 300.507.

26. The Supreme Court has held that the goal of an IEP is to enable the child to make progress. *Endrew F.* 580 U.S. at 387. The progress "contemplated by [an] IEP must be appropriate in light of the child's circumstances." *Id*. An IEP must address a student's identified educational needs "by identifying the student's present abilities, goals for improvement, services designed to meet those goals, and a timetable for reaching those goals." *Coleman v. Pottstown Sch. Dist.*, 983 F.Supp.2d 543, 563 (E.D. Pa. 2013.)

## V. FACTS

27. Currently, A.B. is a ten-year-old, fifth grade student residing within the District's geographic boundaries. A.B. is a "child with a disability" who qualifies for special education under the Individuals with Disabilities Act ("IDEA"), 20, U.S.C. § 1401(3)(A), with a diagnosis of Autism Spectrum Disorder and Intellectual Disability.

28. A.B. was initially identified, in 2021, as eligible for special education supports and services, under the disability identification of Autism. Student's records demonstrate ongoing behavioral challenges over all his years in the District, most of which involve physical aggression towards others.

29. Since entering the District in 2021, Student has exhibited extensive behaviors, many times per day, including: elopement; public defecation, with Student subsequently playing with and/or physically directing the feces towards others and scratching their faces with feces-covered fingers and/or fecal smearing; pulling the hair of others, resulting in removal of hair from the root of the victim; biting and scratching, resulting in the breaking of skin; throwing and/or aggressive movement of physical objects accessible when escalated, including (but not limited to): computers; wires and electrical cords; trash cans; chairs, binders; materials displayed within classrooms/hallways; removal of items from another person's possession and/or person (*i.e.* grabbing an individual's clothing/body/hair and pulling or sustaining a grasp); forceful kicking of other individuals; extensive bodily hitting of others (*i.e.* making forceful contact); disrobing; and causing others injury. Said behaviors are extremely pronounced and have dramatically increased in frequency and severity during the 2024-2025 school year.

30. Until his recent removal to the CCIU program in the 2024-2025 school year, Student attended his neighborhood school of Russell Elementary ("Russell"), within the District. He has attended school with many of the same classmates from year to year, all of whom are severely disabled and nonverbal and several of whom are medically fragile as well.

31. The District has long held concerns regarding its ability to appropriately meet A.B.'s comprehensive needs and, in 2023, filed a Due Process hearing request asserting that the Student's placement at Russell was inappropriate because the services and supports there were insufficient to meet the Student's behavioral and communication needs. Subsequently, the District sought an order permitting the completion of referral

packets to private schools without parental consent to at least explore outside placements that might better address and support Student's comprehensive educational needs.

32. The resulting Hearing Officer decision, dated July 28, 2023, disappointingly found that, at that time, A.B. was receiving a free and appropriate public education (FAPE) from the District and refused to permit the District to override the IDEA's parental consent rules to even send application packets to a more restrictive placement within a private school which might have helped Student at that time.

33. In compliance with the 2023 decision, the District did its best to maintain A.B.'s in-District placement at Russell until January 25, 2025.

34. In January 2025, the District filed for due process to implement a 45-day unilateral placement as maintaining A.B.'s placement in the District became substantially likely to result in injury to himself and others.

35. The District unilaterally removed A.B. to the CCIU's Coatesville Autistic Support classroom based on the substantial likelihood of injury to himself or others. The Hearing Officer who heard the 2025 matter, Brian Ford, agreed that maintaining Student at Russell was substantially likely to result in injury to himself or others and maintained A.B.'s placement at CCIU. Exhibit A, Hearing Officer Decision, 02/28/2022.

36. Due to dicta and an error of law contained in Hearing Officer Ford's decision, the District filed for appeal in the matter. After appeal, the Parties achieved settlement and Hearing Officer Brian Ford's decision was vacated. Exhibit B, Confidential Settlement and Release.

37. Shortly after settlement, Parent filed the instant due process complaint alleging that despite A.B. being in the CCIU program for less than a year, and despite that he was making educational gains in an environment where he had positive relationships with both peers and staff for the first time: (1) A.B. no longer required the CCIU setting and instead

belonged in a program at his home school, Russell Elementary, which lacks CCIU's supports; and (2) that AB should not be harnessed for transportation which was necessary for his safety, that of others on the bus, and the general public due to his extremely unsafe behavior on the bus. While A.B. has made progress at the CCIU program, A.B. continues to engage in severe and aggressive behaviors which require substantial support, outside of what is available at the neighborhood public school. Exhibit C, Parent Due Process Complaint, 12/2/2025.

38. The District maintained that A.B. continued to require the heighted level of services, including skilled behavioral services, that was offered at the CCIU placement, as A.B. still engaged in dangerous and serious behaviors.

39. While aggression has certainly decreased, the aggressive behaviors are still apparent, intense, and often require numerous highly trained staff to assist. A.B. aggressed at his peer during Special Olympics, requiring multiple trained staff to safely release his grip and stabilize A.B., resulting in a restraint. A.B. continues to experience a resurgence of aggressive behaviors including during transitions.

40. Moreover, A.B. requires a bathroom protocol inclusive of numerous trained staff to avoid fecal and urine smearing.

41. A.B.'s hair pulling behavior is intense, oftentimes requiring multiple trained staff to properly perform a finger peel to release his grip on hair. A.B. has ripped hair from staff scalps.

42. A.B. requires intensive staff supervision, who are within his arms reach, when interacting with his peers. He is unable to engage in any unstructured time with peers.

43. A.B., despite having a decrease in the number of behaviors, still required multiple restraints throughout the school year due to the intensity of the behaviors still occurring.

44. Student's classroom model at the CCIU includes one teacher, four rotating RBT's, at least one BCBA, a speech-therapist assigned to the autistic support classrooms, and Student's individual RBT. In addition to direct classroom support, Student's current placement also has access to behavior consultants and RBTs to provide as-needed support and interventions. All staff members in Student's placement are Safety Cares trained.

45. During the hearing, it became evident that the intent was to reduce A.B.'s commute by assigning him to the exact same CCIU program, at a new Malvern location approximately 30-40 minutes closer in distances to his home, for the 2026-2027 school year.

46. The District has issued a NOREP reflecting their intention to move A.B. to the new CCIU program at Malvern, as soon as it is operational this Fall.

47. Based upon numerous accounts of witness testimony, A.B.'s behaviors are not at a level in which CCIU suggests, encourages, or recommends transitioning back to the District. Indeed, CCIU witnesses were insistent that removal now would be deleterious to A.B. and the gains he has worked so hard to make.

48. The Hearing Officer Michael J. McElligott agreed as he effectively ordered placement for the 2026-2027 school year at the CCIU program. *See* Exhibit D, Hearing Officer Decision, 07/02/2026, at page 26.

49. However, with no identifiable pedagogical basis, in the same Order, the Hearing Officer unilaterally and arbitrarily determined that if the new Malvern location was not operational by September 15, 2026 (a date that has no significance other than he randomly chose it), that student would be returned to the District.

50. The decision did not explain why the CCIU Malvern program was appropriate for Student until September, 15, at which time the Russell classroom, lacking in CCIU's supports, would somehow become the appropriate program. In fact, the decision ignored all of the evidence presented that a return to Russell at this time would undo the academic and behavioral progress Student has made and cause regression or renewed behavioral escalation, thereby undoing all the very progress during the 2025-2026 school year lauded by the Hearing Officer in his decision.

51. The Hearing Officer, not an educator himself, did recognize that "[e]ducators from the District and the IU testified that…, they felt the student continued to require a specialized placement for appropriate programming," at the IU. *See* Exhibit D at page 15. Indeed, the Hearing Officer noted that the program at the IU produced, "phenomenal progress" when compared to the Student's persistent unavailability for instruction when he was in a District placement, where "due to safety concerns for staff and fellow students based on the student's aggression, the student was educated in a classroom without peers present." *Id*.

52. The Hearing Officer, therefore, acknowledged that continuing placement at the IU was appropriate because changing the Student's programming could jeopardize the Student's meaningful progress and that the IU program constituted a FAPE.

53. The CCIU program comprises supports and services that the CCIU is able to provide, but which are simply not available or replicable in a public school.

54. Thus, the Hearing Officer decision and findings therein support moving the student from the existing CCIU location in Coatesville to the same program's new location in Malvern, closer to the Student's home. They certainly do not support a return to Russell, the same

classroom placement he had when he last attended the District prior to January 2025, where he was unavailable for instruction due to the dangerousness, intensity, frequency and length of behavioral incidents. They most decidedly do not support the random date of September 15 as a transition date, by which time if the Malvern location is not yet ready (and it is expected to be ready a mere few weeks after that date), Student must be ripped from his successful CCIU placement and thrust back into an environment which cannot support his needs.

55. The Hearing Officer rendered this nonsensical decision notwithstanding his own acknowledgment that an abrupt change in continuity of services and staff would threaten to catapult Student back to behaviors that existed before he began receiving services at the CCIU. *See* Exhibit D at page 15-16, ¶ 52, 53. The Hearing Officer decision sets this child up to fail if the CCIU location is ready, as anticipated, a mere few weeks after his randomly selected date.

56. Under the Stay-Put provision of IDEA, and with the appeal in this matter not even due until October 2, 2026, A.B. has remained at the CCIU Coatesville location throughout the duration of the litigation.

57. The purpose of IDEA's Stay-Put provision was to establish that, "the child shall remain in the current educational placement until all [IDEA] proceedings have been completed." *M.R. v. Ridley Sch. Dist*., 744 F.3d 112, 124 (3d Cir. 2014).

58. Moreover, "as the Third Circuit has repeatedly made clear, the IDEA displays a strong policy of protecting students by preserving the status quo when parents and school districts disagree." *Jalen Z. v. Sch. Dist. of Philadelphia,* 104 F. Supp. 3d 660, 681 (E.D. Pa. 2015).

59. While the IDEA does not clearly define "current educational placement," the courts have long held that the "[t]he primary factor in determining a child's current educational

placement is the IEP that was 'actually functioning' when the stay-put rule was invoked." *Hatikvah Int'l Acad. Charter Sch. v. E. Brunswick Twp. Bd. of Educ.*, 10 F.4th 215, 219 (3d Cir. 2021) (emphasis added). As the Third Circuit has made clear, the term "then-current educational placement" in the IDEA "must be accorded its plain meaning," and "refers to the operative placement actually functioning at the time the dispute first arises." *Pardini v. Allegheny Intermediate Unit,* 420 F.3d 181, 190–92 (3d Cir. 2005) (quoting *Thomas v. Cincinnati Bd. of Educ.*, 918 F.2d 618, 625–26 (6th Cir. 1990)). That placement is the CCIU Autistic Support classroom, not Russell.

60. Moreover, the Hearing Officer's decision directly imposed a timeline for changing Student's placement during the period in which the District's appeal was not yet even due.

61. Therefore, the District is left with the untenable choice of narrowly appealing a generally highly favorable Hearing Officer decision, where the District believes, overwhelmingly, that the Hearing Officer made the correct finding in maintaining A.B.'s placement at the CCIU program. It is only the Hearing Officer's arbitrary and harmful imposition of a fabricated transfer date of September 15 that has forced the District to appeal that discrete portion of the Decision and Order, particularly when the CCIU Malvern placement is set to be open a few short weeks following the Hearing Officer's manufactured, random date.

**RELIEF REQUESTED**

The Hearing Officer improperly made a determination that if the CCIU Malvern placement was not open by the meaningless date of September 15, 2026, that A.B. would be returned to an unsafe and inappropriate placement at Marple Newtown School District, removing the intensive and necessary behavioral supports and services Student needs, in addition to the low teacher to staff ratios and highly specialized program that A.B. requires to make meaningful

progress and maintain safety for all.

WHEREFORE, the District respectfully requests that this Court:

a. Review the administrative record in its entirety;

b. Reverse the Hearing Officer's Order only with regard to the September 15th deadline;

c. Order that Student remain at his CCIU Coatesville program until the Malvern location is open; and

d. Grant any other such relief as the Court deems appropriate.

**Respectfully submitted,**

/s/_*Gabrielle C. Sereni, Esquire*

Gabrielle C. Sereni, Esquire
Attorney ID # 83899
Samantha L. Newell, Esquire
Attorney ID #329712
Tashell Jenkins, Esquire
Attorney ID #323580
Sereni Law Group, LLC
32 Regency Plaza
Glen Mills, PA 19342
gabrielle@serenilawgroup.com

Dated: August 28, 2026

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Marple Newtown School District, | : | |
| Plaintiff, | : | |
| | : | Civil Action No. _______________ |
| v. | : | |
| | : | |
| S.Z., as parent and | : | |
| Natural guardian of A.B., | : | Hon. |
| Defendant. | : | |

CERTIFICATE OF SERVICE

I, Gabrielle C. Sereni, Esquire, hereby certify that on the date set forth herein a true and correct copy of the foregoing Complaint was electronically filed by ECF and emailed to the following:

David G. Arnold, Esquire
Law Office of David G. C. Arnold
920 Matsonford Rd, Conshohocken, PA 19428

Respectfully submitted,

*/s/ Gabrielle C. Sereni, Esquire*
Gabrielle C. Sereni, Esquire
Attorney ID # 83899
Samantha L. Newell, Esquire
Attorney ID #329712
Tashell Jenkins, Esquire
Attorney ID #323580
Sereni Law Group, LLC
32 Regency Plaza
Glen Mills, PA 19342
gabrielle@serenilawgroup.com

Dated: August 28, 2026